## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

DAZZLE SOFTWARE II, LLC, a
Michigan limited liability company,
and L AND L GOLD ASSOCIATES,
INC., a Michigan corporation, d/b/a
AMERICAN JEWELRY AND LOAN,

    Plaintiffs,

vs.

JOHN KINNEY, an individual, and
CENTRAL OHIO SCRAP METAL
CO., an Ohio corporation, d/b/a LEV'S
PAWN SHOP,

    Defendants.

Case No. 16-cv-12191

Hon. Matthew F. Leitman
Magistrate Mona K. Majzoub

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFFS' *EX PARTE* APPLICATION FOR SEIZURE
OF COMPUTER STORAGE DEVICES AND COMPUTERS;
OR IN THE ALTERNATIVE FOR STAY OF HEARING
<u>PENDING COMPLETION OF EXPEDITED DISCOVERY</u>**

## ISSUES PRESENTED

Should Plaintiffs' *Ex Parte* Application for Seizure of Computer Storage Devices and Computers be granted when 1) the Act upon which that Application was based was not effective at the time of the alleged misappropriation and therefore does not apply; 2) the Parties have not been afforded an opportunity for limited and expedited discovery; and 3) Plaintiff cannot meet all of the elements of 18 U.S.C. § 1836(b)(2)(A)(ii) of the Defend Trade Secrets Act of 2016?

**Plaintiffs answer "yes"**

**Defendants answer "no"**

## <u>CONTROLLING AUTHORITY</u>

Defend Trade Secrets Act of 2016 (the "DTSA"),
    18 U.S.C. § 1836, *et seq*

NOW COME Defendants, John Kinney ("Mr. Kinney"), an individual, and Central Ohio Scrap Metal Co., an Ohio corporation, d/b/a Lev's Pawn Shop (collectively "Defendants"), by and through their undersigned counsel, and, pursuant to the Notice of Hearing on Plaintiffs' *Ex Parte* Application for Seizure of Computer Storage Devices and Computers Pursuant to the Defend Trade Secrets Act of 2016 (ECF #2) (ECF #13), hereby respectfully submit their Opposition to Plaintiffs' *Ex Parte* Application for Seizure of Computer Storage Devices and Computers Pursuant to the Defend Trade Secrets Act of 2016 (ECF #2) (the "*Ex Parte* Application"). In the alternative, Defendants respectfully request that the Hearing be stayed until the completion of expedited discovery.

For the reasons that are more fully set forth in the Memorandum in Support that follows, the *Ex Parte* Application should be denied; or, in the alternative, the Hearing thereon should be stayed pending the completion of expedited discovery.

## MEMORANDUM IN SUPPORT

## I.   STATEMENT OF THE CASE

Plaintiffs filed their Verified Complaint and Jury Demand (the "Complaint") (ECF #1) on June 14, 2016 and, therein, asserted several causes of action. One of those causes of action, upon which Plaintiffs base their entitlement to the relief

sought in the *Ex Parte* Application, is an alleged violation of the Defend Trade Secrets Act of 2016 ("DTSA").  Complaint, pages 15-17.[1]

On June 14, 2016, Plaintiffs filed their *Ex Parte* Application.

In the Complaint and the *Ex Parte* Application, Plaintiffs allege, among other things, that on March 5, 2016, Defendants, without consent to do so, copied and converted to their own possession the entire contents of a certain computer (the "Third Computer"),[2] which included Dazzle Software, a second generation, SQL-based program that was on the verge of going live when Mr. Best died; access/temporary license codes to allow for the continued operation of the Dazzle Software; and other intellectual property belonging to Dazzle II.  Complaint, ¶ 27; see, also, *Ex Parte* Application, ¶ 10.

_____

[1] There are two separate claims assigned "Count IV" in the Complaint.  The Count IV to which the *Ex Parte* Application and this Opposition apply can be found on pages 15 to 17 of the Complaint and is entitled "Count IV - Violation of the Defend Trade Secrets Act of 2016."

[2] In the Complaint, Plaintiffs allege that as a consequence of a Preliminary Injunction obtained by Plaintiff American Jewelry and Loan ("AJL") in an unrelated matter in the Circuit Court for Oakland County, Michigan—a copy of which is attached to the Complaint as Exhibit 1—LiPing Liufu Best, surviving spouse of Derek A. Best, who was the owner of Dazzle Systems, was required to turn over three computers and data to a named third party for the purpose of continuing the operation and maintenance of the Dazzle Software, so that Dazzle's customers, including AJL, could continue to operate their pawn broker businesses uninterrupted.  Complaint, ¶ 20.  Plaintiffs further allege that Mrs. Best turned over only two (2) of the computers, retaining possession of the "Third Computer." Complaint, ¶ 22.

As a consequence of the alleged misappropriation by Defendants of the contents of the Third Computer, Plaintiffs assert that they have suffered and will continue to suffer irreparable harm and have asked this Court for an order, among other things, directing the U.S. Marshal to seize (1) Western Digital WD My Passport 0820 USB Device, bearing serial/identification number 575845314141335438383337; (2) ADATA USB Flash Drive ISB Device bearing serial/identification number 11a1713082120014; (3) UFD USB Flash Drive USB Device bearing serial/identification number aawcrfc21gqwena9; and (4) any computers or computer storage devices that may have been used by Defendants to store, copy, review, disseminate, or otherwise access any of the data copied by Defendants from the Third Computer to any or all of the Storage Devices.

For the reasons that are more fully set forth below, the *Ex Parte* Application should respectfully be denied. In the alternative, the hearing on the *Ex Parte* Application should be continued until Defendants have been able to engage in expedited and limited discovery, the necessity and extent of which are the subject of Defendants' Motion for Expedited Discovery and Stay of Hearing on Plaintiffs' *Ex Parte* Application for Seizure of Computer Storage Devices and Computers Pursuant to the Defend Trade Secrets Act of 2016 which will be filed contemporaneously herewith.

3

## II.   LAW AND ARGUMENT

### A. Plaintiff's *Ex Parte* Application For Seizure Of Computer Storage Devices And Computers Pursuant To The Defend Trade Secrets Act Of 2016 Must Be Denied As The Act Pursuant To Which The Application Is Brought Was Not Effective Until After The Date Upon Which The Alleged Misappropriation Of Trade Secrets Occurred.

The Dazzle Software, which is the subject matter of the instant matter, was developed, marketed, and serviced by Derek Best.  Complaint, ¶ 13.  Mr. Best died on February 17, 2016, leaving his wife, LiPing Liufu Best ("Mrs. Best"), the sole heir and successor to his interests in the Dazzle Systems and its assets.  Complaint, ¶ 16.

Subsequent to Mr. Best's death, Plaintiff, L and L Gold Associates, Inc. dba American Jewelry & Loan ("AJL"), initiated litigation in Oakland County, Michigan Circuit Court which, among other things, resulted in the entry of a Stipulated Temporary Restraining Order (the "TRO") (Complaint, Exhibit 1), Complaint, ¶ 21.  The TRO provided, among other things, that Mrs. Best was to turnover to a third party the computers Mr. Best used to operate the business. Complaint, ¶ 21; *Ex Parte* Application, ¶ 7.  Mrs. Best initially turned over 2 of the 3 computers housing the Dazzle Systems data, but failed to turn over the Third Computer.  Complaint, ¶ 22.

4

On March 5, 2016, Defendant John Kinney was permitted by Mrs. Best to access the Third Computer.[3] Brief in Support of *Ex Parte* Application, p. 6. As of that date, Plaintiffs had not yet purchased the business of Mr. Best. Brief in Support of *Ex Parte* Application, p. 6.

On April 22, 2016, Mrs. Best and Plaintiff Dazzle Software II LLC executed an Intellectual Property Purchase Agreement (the "IPPA") by which ownership of Mr. Best's Dazzle Software was transferred to Dazzle Software II LLC. Complaint, ¶ 21 and Exhibit 2.

As addressed more fully in Defendants' Motion to Dismiss Count IV of Plaintiffs' Complaint with Prejudice ("Motion to Dismiss") (ECF #14), which Defendants incorporate by reference herein, the DTSA had not been enacted as of the date of the alleged misappropriation. "The amendments made by this section shall apply with respect to any misappropriation of a trade secret for which any act occurs on or after the date of the enactment of this Act." 18 U.S.C. § 1836(2)(e). The date of enactment of the DTSA was May 11, 2016.

"Amendment by Pub. L. 114–153 applicable with respect to any misappropriation of a trade secret (as defined in section 1839 of this title) for

---

[3] Plaintiffs identify March 5, 2016 as the date on which Defendants are alleged to have misappropriated the Dazzle Software (Complaint, Exhibit 3), and tellingly concede in their Brief in Support of *Ex Parte* Application at page 6 that "Kinney was permitted to access the Third Computer by Mrs. Best, who, at that time, still possessed the authority to grant such access."

which any act occurs on or after May 11, 2016, see section 2(e) of Pub. L. 114–153, set out as a note under section 1833 of this title."

18 U.S.C. § 1836, "Effective Date of New Amendment."

In addition to the express language contained within the DTSA—that it shall apply to acts occurring on or after May 11, 2016—the committee reports from both the House and Senate reflect the legislative intent to limit the scope of the DTSA so that it is not to be applied retroactively.   "Subsection 2(e) provides that amendments made by section 2 of the Act shall apply to any misappropriation for which any act occurs on or after the date of enactment of the Act."   See generally, House of Representatives Report 114-529, *Defend Trade Secrets Act*, "Section by Section Analysis," p. 14; *see also*, Senate Report 114-220, *Defend Trade Secrets Act of 2016*, "Definitions; Rule of construction; Conforming amendments," p. 10.

Moreover, the Supreme Court has held that, "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).   When determining whether or not to apply legislation retroactively, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result […] where the congressional intent is clear, it governs." *Id.* at 264.

In the case of the DTSA, Congress has clearly set forth its intention, to wit: "[t]he amendments made by this section shall apply with respect to any

6

misappropriation of a trade secret . . . **for which any act occurs on or after the date of the enactment of this Act**." See, 18 U.S.C. § 1836(2)(e) (emphasis added).

To the extent that any trade secrets were misappropriated, which Defendants categorically deny, it is incontrovertible that such alleged misappropriation occurred on March 5, 2016 (*see*, Complaint, ¶¶ 25–27), more than two (2) months before the enactment of the DTSA.

Because the alleged misappropriation by Defendants of the subject trade secrets occurred before the effective date of the DTSA, Plaintiffs' *Ex Parte* Application, brought pursuant to that Act's provisions, simply, cannot be maintained.

Defendants, therefore, respectfully request that the *Ex Parte* Application be dismissed and that Defendants be awarded their costs and expenses, including attorney's fees, in the defense of this frivolous application.

**B**. **To The Extent That The Court Does Not Dismiss Count IV Of Plaintiffs' Complaint And/Or Plaintiff's *Ex Parte* Application, Defendants Are Entitled To A Stay Of Any Hearing On The *Ex Parte* Application Until They Are Provided An Opportunity To Engage In Expedited And Limited Discovery.[4]**

---

[4] Defendants will be, contemporaneously herewith, filing their separate Motion for Expedited Discovery and Stay of Hearing on Plaintiffs' *Ex Parte* Application for Seizure of Computer Storage Devices and Computers Pursuant to the Defend Trade Secrets Act of 2016 ("Motion for Expedited Discovery"), which Defendants incorporate herein, fully, by reference.

In support of the allegations of unauthorized misappropriation by Defendants of the contents of the Third Computer, Plaintiffs filed and have relied upon the Declaration of Mark St. Peter (the "St. Peter Declaration") (ECF # 1-5). In his Declaration, Mr. St. Peter stated that through his examination of the Third Computer, and "the above information and series of events," which are identified in the Declaration, and related forensic data,[5] he determined (1) "Clonedisk was run on the computer to create a copy (an image) of the Hard Drive, including all of the data that was stored on the Hard Drive at that time. . .," St. Peter Declaration, ¶ 15; (2) "the G: drive referenced above pointed to an external device, the Western Digital WD My Passport 0820 USB Device. . . ('My Passport')," St. Peter Declaration, ¶ 16; and (3) "that a .wim file was created, which is an image copy of the Hard Drive that was cloned . . . ." St. Peter Declaration, ¶ 17.

Mr. St. Peter stated in his Declaration that he also determined, based upon his examination, that, when requested, Defendants did not turn over the actual USB thumb drive and external USB hard drive, alleged to have been used by Defendants to copy the contents of the Third Computer.  St. Peter Declaration, ¶¶ 28 and 29.

---

[5] The Third Computer is referred to in the St. Peter Declaration as an HP (Hewlett-Packard) All-in-One computer, model 23-B019C, serial number 3CW24501LM. The St. Peter Declaration states that Mr. St. Peter also examined a USB thumb drive, identified as a Sandisk Cruzer Glide, serial number 200548574113E690EA88 (the "Thumb Drive"), and an external USB hard drive, identified by serial number WXE1AA3T8837 (the "Hard Drive"). St Peter Declaration, ¶¶ 28 and 29.

In order to fully and fairly address and oppose Plaintiffs' demand for preliminary injunctive relief and the immediate seizure of Defendants' computer storage devices and computers, Defendants respectfully represent to the Court that they should be granted an opportunity to engage in expedited discovery, limited in scope, to depose Mr. St. Peter and to obtain and have examined by their own forensic expert, prior thereto, all information and forensic data relied upon by Mr. St. Peter in arriving at the conclusions set forth in his Declaration.  This would include, but, depending upon Mr. St. Peter's deposition testimony, not be limited to, the Third Computer, the Thumb Drive, and the Hard Drive; the "various forensic analysis reports" prepared by Mark St. Peter, which are referred to in his Declaration; and any and all other forensic or other data upon which Mr. St. Peter relied in arriving at the conclusions contained in his Declaration.

As explained in greater detail in the Motion for Expedited Discovery, Rule 26(d) vests this Court with discretion to order the expedited discovery which Defendants seek.  *See, e.g., Lemkin v. Bell's Precision Grinding*, No. 2:08-CV-789, 2009 U.S. Dist. LEXIS 126739, 2009 WL 1542731, at *1 (S.D. Ohio June 2, 2009) (citing *Qwest Communs. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)). The discovery requested is limited and narrowly tailored to the issue that is central to Plaintiffs' request for the immediate seizure of Defendants' computer storage devices and computers, would assist the Court in

arriving at a just decision, and is not intended to be nor will it result in any burden or prejudice upon the Plaintiffs.

Although the date upon which Plaintiffs retained the services of Mr. St. Peter cannot be determined based upon a review of the pertinent documentation, Mr. St. Peter has, nevertheless, clearly been in possession of the Third Computer since March 22, 2016 (St. Peter Declaration, ¶ 11 b.) and the Thumb Drive and Hard Drive since May 20, 2016 (St. Peter Declaration, ¶¶ 28 and 29). Both the Complaint and the *Ex Parte* Application were filed on June 14, 2016. Plaintiffs' counsel has had an extended period of time in which to retain their expert, receive and digest his report(s), and marshal their alleged evidence prior to filing the *Ex Parte* Application. Mr. St. Peter, likewise, has had an extended period of time in which to examine the Third Computer and related computer storage devices and other forensic data and prepare the various forensic analysis reports from the image of the Third Computer's hard drive (St. Peter Declaration, ¶ 12), which, ostensibly, are embodied and/or referenced in his Declaration.

Defendants seek, only, that they be given the same opportunity and, as requested in the Motion for Expedited Discovery, that they be permitted, on an expedited basis, to propound written discovery requesting the Third Computer, the Thumb Drive, and the Hard Drive (or reasonable access thereto); copies of the "various forensic analysis reports" prepared by Mark St. Peter, which are referred

10

to in his Declaration; and any and all other forensic or other data upon which Mr. St. Peter relied in arriving at the conclusions contained in his Declaration; and, after receipt of the same and a reasonable time for examination and analysis by their expert, they be permitted to notice and take the deposition of Mr. St. Peter, limited to the matters addressed in his Declaration.   Upon completion of the limited discovery addressed above, the hearing might then proceed with all parties on equal footing.

### C. Even If The Court (1) Does Not Dismiss Count IV Of Plaintiffs' Complaint And/Or Plaintiff's *Ex Parte* Application And (2) Denies Defendants' Motion For Expedited Discovery, Plaintiffs, Nevertheless, Cannot Meet Their Burden Of Proof And The *Ex Parte* Application Should Be Denied.

In order to obtain the seizure order that they seek, Plaintiffs must satisfy this Court that **each of the following requirements is met** and the "court may not grant an application [] unless [it] finds that it clearly appears from specific facts that --

(I)     an order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure or another form of equitable relief would be inadequate to achieve the purpose of this paragraph because the party to which the order would be issued would evade, avoid, or otherwise not comply with such an order;

(II)     an immediate and irreparable injury will occur if such seizure is not ordered;

(III)   the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom the seizure would be ordered of granting the application and substantially outweighs the harm to any third parties who may be harmed by such seizure;

(IV)   the applicant is likely to succeed in showing that –

(aa)   the information is a trade secret; and
(bb)   the person against whom seizure would be ordered –

(AA) misappropriated the trade secrets of the applicant by improper means; or
(BB) conspired to use improper means to misappropriate the trade secret of the applicant;

(V)   the person against whom seizure would be ordered has actual possession of –

(aa)   the trade secret; and
(bb)   any property to be seized;

(VI)   the application describes with reasonable particularity the matter to be seized and, to the extent reasonable under the circumstances, identifies the location where the matter is to be seized;

(VII)   the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person; and

(VIII) the applicant has not publicized the requested seizure."

18 U.S.C. § 1836(b)(2)(A)(ii).

Because Plaintiffs cannot satisfy this Court that **each** of the following requirements is met, Plaintiffs' *Ex Parte* Application should be denied.

### a. Plaintiffs Cannot Prove That An Order Issued Pursuant To Rule 65 Of The Federal Rules Of Civil Procedure Would Be Inadequate.

Under the circumstances, as set forth above, Defendants deny that any nature of injunctive relief is necessary or appropriate.  However, and assuming, *arguendo*,

for purposes of this portion of the Opposition only that Plaintiffs are entitled to some relief, except for their self-serving assertion, Plaintiffs have offered no evidence that an order issued pursuant to Fed. R. Civ. P. 65 would be inadequate. In order to establish this threshold requirement to obtaining the seizure order they seek, Plaintiffs must prove that, in its absence, Defendants would evade, avoid, or otherwise not comply with an order issued pursuant to Fed. R. Civ. P. 65. Plaintiffs have failed to muster any such proof.   Moreover, Defendants have offered to Plaintiffs a [Proposed] Stipulated Order for Preservation of Evidence and Non-Dissemination of Electronic Data (the "[Proposed] Stipulated Order") (see Exhibit A, hereto), which has been rejected.[6]

In light of the foregoing, Plaintiffs have failed to prove that an order issued pursuant to Fed. R. Civ. P. 65 would be inadequate and, therefore, the *Ex Parte* Application should be denied.

### b. Plaintiffs Will Not Suffer An Immediate And Irreparable Harm If Seizure Of Defendants' Computers Is Not Ordered.

On June 14, 2016, Plaintiffs filed their *Ex Parte* Application.  As evidence of the immediate and irreparable injury that they would suffer if the seizure order was not granted, Plaintiffs, without anything more than their suspicions, assert that

---

[6] On July 1, 2016, undersigned counsel for Defendants submitted to Plaintiffs' counsel the [Proposed] Stipulated Order. See e-mail dated July 1, a copy of which is attached hereto as Exhibit B.  To date, Plaintiffs' counsel has not concurred with this Order.

13

Defendants will evade, avoid, or otherwise not comply with an order entered under Fed. R. Civ. P. 65 and, if given notice of the *Ex Parte* Application, would destroy, further conceal, or further disseminate the trade secrets and/or the devices on which those trade secrets are stored.  Brief in Support of *Ex Parte* Application, p. 6.  Plaintiffs allege that such behavior would result in immediate and irreparable harm to Dazzle II.  Brief in Support of *Ex Parte* Application, p. 6.

On June 15, 2016, the Court entered its Order Declining to Grant Application for Seizure of Storage Devices and Computers on an *Ex Parte* Basis (ECF #3), in which, among other things, it ordered Plaintiffs to serve the Verified Complaint and *Ex Parte* Application on Defendants, after which it would set the matter for a hearing.

On June 24, 2016, the Court entered its Notice of Hearing (ECF #13) and set the *Ex Parte* Application for hearing on Friday, July 15, 2016.

By declining the *Ex Parte* Application and ordering that Defendants be served with the same before the scheduling of a hearing, it is respectfully submitted that the Court recognized that there was no risk that Defendants would destroy, conceal, or disseminate the subject trade secrets or that Plaintiffs would suffer any immediate and irreparable harm if the seizure order was not granted immediately and without notice.

14

In contrast to Plaintiffs' mere suspicions and unsupported assertions, Defendants have represented to this Court that they are "not knowingly in possession of any trade secrets or intellectual property, belonging to Plaintiffs" and that they have "not disseminated any trade secrets or intellectual property, belonging to Plaintiffs." *See*, Affidavit of John Kinney (the "Kinney Affidavit"), ¶¶ 24 and 25, attached hereto as Exhibit C.

Moreover, while denying any intentional wrongdoing, but in order to assuage any doubts or concerns that Plaintiffs might have, Defendants have provided Plaintiffs with the [Proposed] Stipulated Order (which Plaintiffs have not bothered to concur with) and have offered to "permit a computer forensics expert access to its computer system outside normal business hours to investigate the concerns raised by Plaintiffs" in the *Ex Parte* Application. *See* Kinney Affidavit, ¶ 26.

In light of the foregoing, Plaintiffs have failed to meet their burden of proof that they will suffer immediate and irreparable harm unless the seizure order is granted and, therefore, the *Ex Parte* Application should be denied.

### c. The Harm To Plaintiffs Of Denying The Application Does NOT Outweigh The Harm To Defendants Or Third Parties If The Application And Requested Seizure Is Granted.

In support of their claim that the denial of the seizure order **could** have **potentially** dire consequences for Dazzle II, Plaintiffs point only to the potential

for destruction or concealment of the subject trade secrets.  Plaintiffs have provided no evidence—because none exists—that Defendants have destroyed or concealed trade secrets or that they intend to do so.

In contrast, Defendants have (1) testified that they are not knowingly in possession of any trade secrets or intellectual property belonging to Plaintiffs or that they have disseminated any trade secrets or intellectual property; (2) offered up the [Proposed] Stipulated Order; and (3) offered to make their computer system available outside normal business hours for inspection by a computer forensics expert.

While Plaintiffs have not, and cannot prove that they will suffer any actual harm if the seizure order is not granted, Defendants—and their 80 employees—will suffer significant harm if the seizure order is granted.  The Dazzle Software that Defendants are licensed to use through December 31, 2016 (Kinney Affidavit, ¶ 5) is invaluable to the day-to-day operation of Defendants' business.  *See* Kinney Affidavit, ¶¶ 6–15.

If prohibited from using the Dazzle Software, Defendants will not be able to perform those day-to-day operations (Kinney Affidavit, ¶ 16); Defendants' customers will be unable to redeem tickets, prove payments, make payments, or see outstanding loan balances (Kinney Affidavit, ¶ 17); the jobs of eighty

16

individuals will be in jeopardy (Kinney Affidavit, ¶ 22); and the active customer accounts of thousands of people will be in jeopardy (Kinney Affidavit, ¶ 23).

In light of the foregoing, Plaintiffs have failed to meet their burden of proof that any harm that they **might** suffer if the seizure order is not granted outweighs the harm that Defendants and third parties **will suffer** if the seizure order is granted and, therefore, the *Ex Parte* Application should be denied.

### d. Plaintiffs Cannot Show That Defendants Have Misappropriated Any Trade Secrets.

While Plaintiffs have alleged that Defendants have misappropriated trade secrets,[7] they have, tellingly, conceded in their Brief that such could not be the case.  In fact, they have admitted just the opposite, to wit: (1) "as noted previously, Kinney was permitted to access the Third Computer by Mrs. Best, who, at that time, still possessed the authority to grant such access" (Brief in Support of *Ex Parte* Application, p.6); and (2) "[t]he transaction whereby Dazzle II purchased the Third Computer and other assets of Mr. Best's business had not yet occurred" at the time Kinney was permitted to access the Third Computer (Brief in Support of *Ex Parte* Application, p.6).

-------------------

[7] 18 U.S.C. § 1839(5)(A) defines "misappropriation" to mean, *inter alia*, the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

17

Although Plaintiffs allege that Kinney exceeded the limits of the access granted by Mrs. Best, they have provided no admissible evidence of that. Interestingly, the IPPA (Complaint, Exhibit 2) contains the following language, "[i]f requested, LiPing will provide an affidavit and testify that (1) she did not grant . . . any . . . access or right whatsoever [sic] the Dazzle Software, to any third party or entity . . . ." Complaint, Exhibit 2 at 4(a)(xii). Conspicuous by its absence is any such affidavit in this case.

In light of the foregoing, Plaintiffs have failed to meet their burden of proof that Defendants have misappropriated any trade secrets and, therefore, the *Ex Parte* Application should be denied.

### e. Defendants Deny Having Any Trade Secrets Or Property That Plaintiffs Seek To Have Seized Through This Application.

In the face of Kinney's Affidavit testimony that Defendants are not knowingly in possession of any trade secrets or intellectual property belonging to Plaintiffs, the bare allegation to the contrary is not sufficient to meet Plaintiffs' burden of proof that Defendants have "actual possession" of any such trade secret or property to be seized.

In addition, and as previously stated, while Defendants deny any intentional wrongdoing, in order to address any doubts or concerns that Plaintiffs might have, Defendants have provided Plaintiffs with the [Proposed] Stipulated Order (which has not been accepted) and have offered to "permit a computer forensics expert

access to its computer system outside normal business hours to investigate the concerns raised by Plaintiffs" in the *Ex Parte* Application. *See* Kinney Affidavit, ¶ 26.

In light of the foregoing, Plaintiffs have failed to meet their burden of proof that Defendants have possession of any trade secrets and, therefore, the *Ex Parte* Application should be denied.

### f. Plaintiffs' Application Seeks The Seizure Of All Of Defendants' Computers Which Is Unreasonable Under The Circumstances.

Plaintiffs claim that they have described, with reasonable particularity, the matter to be seized and the location where the matter is to be seized. However, while specifically identifying three (3) computer storage devices, Plaintiffs' *Ex Parte* Application requests that "any computers . . . that may have been used by Defendants . . ." be seized.

Although Defendants deny any intentional wrongdoing, it is, nevertheless, clear that to apply such a general description to the matter to be seized does not identify such matter with the particularity required by the statute; and to require that Defendants turn over each and every one of their computers to prove that they do not have what Plaintiffs seek would be unreasonable and would cause Defendants and their employees and customers to suffer unnecessarily, as described more fully in subsection c. above.

In light of the foregoing, Plaintiffs have failed to meet their burden of proof that they have described the matter to be seized with reasonable particularity and, therefore, the *Ex Parte* Application should be denied.

**g. Defendants Have Been Provided Notice Of The *Ex Parte* Application And Have Not Destroyed, Moved, Hid, Or Otherwise Made The Subject Matter Of This *Ex Parte* Application Inaccessible To The Court.**

In light of the Court's Order (ECF #3), declining to grant Plaintiffs' seizure application on an *Ex Parte* basis, the need to proceed on the application without notice has been rejected by this Court and, thus, Plaintiffs cannot meet their burden with respect thereto. Therefore, the *Ex Parte* Application should be denied.

Moreover, Defendants have been provided notice of Plaintiffs' *Ex Parte* Application and have represented to this Court that they are "not knowingly in possession of any trade secrets or intellectual property, belonging to Plaintiffs" and that they have "not disseminated any trade secrets or intellectual property, belonging to Plaintiffs." *See*, Kinney Affidavit, ¶¶ 24 and 25. Defendants have not committed any of the acts that the *Ex Parte* Application is intended to prevent and have no intention of doing so. Plaintiffs simply have provided no evidence to the contrary.

### h. Plaintiffs Have Not Met Their Burden Of Proof That They Have Not Publicized The Requested Seizure.

Finally, in order to meet their burden of proof and obtain from this Court the seizure order that they seek, Plaintiffs must prove that they have not publicized the requested seizure. Other than the mere assertion by Plaintiffs that they have not publicized the requested seizure, no admissible evidence has been proffered to meet this burden. Therefore, the *Ex Parte* Application must be denied.

## III.  CONCLUSION

For the reasons set forth herein above, Defendants respectfully request that Plaintiffs' *Ex Parte* Application be denied and that they recover their costs and expenses, including attorney's fees, incurred in the defense of this frivolous application; or, in the alternative, that the Court stay the hearing on Plaintiffs' *Ex Parte* Application until such time as the expedited discovery is completed and/or the Motion to Dismiss has been ruled on by the Court.

Respectfully submitted,

BUTZEL LONG, a professional corporation

By: /s/ Phillip C. Korovesis
    Phillip C. Korovesis (P40579)
    Paul M. Mersino (P72179)
150 West Jefferson, Suite 100
Detroit, Michigan 48226
(313) 225-7000
Attorneys for Defendants
CO-COUNSEL

Eliott Good
Chorpenning, Good & Pandora Co., LPA
605 South Front Street, Suite 210
Columbus, Ohio 43215
(614) 469-1301
ergood@chorgood.com
Attorneys for Defendants

Dated:  July 7, 2016

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2016, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

BUTZEL LONG, a professional corporation

By: /s/ Phillip C. Korovesis
     Phillip C. Korovesis (P40579)
     Paul M. Mersino (P72179
150 West Jefferson, Suite 100
Detroit, Michigan 48226
(313) 225-7000
Attorneys for Defendants